**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**


Glenn S. Horen, etc.,                                           Case No.  3:12CV187

       Plaintiff

       v.                                                          **ORDER**

Board of Education of the City
   of Toledo Public School District, et al.,

       Defendants


       This is one of a series of cases brought on behalf of DH, a multi-handicapped child (now fourteen years of age) in which her parents, suing *pro se*,[1] assert that defendant Board of Education of the City of Toledo Public Schools (TPS) has since 2006 deprived their daughter of the free appropriate education (FAPE) to which she is entitled under the Individuals With Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et. seq*., and for violations of other federal and state statutes.

       Pending are plaintiff's motion for partial summary judgment (Doc. 28) and defendants' motion for summary judgment (Doc. 33).[2] For the reasons that follow, I deny plaintiff's motion and grant defendants' motion.

**Background**

---

[1] I take judicial notice of the fact that DH's mother, Janet Horen, is an attorney.

[2] Also pending are plaintiff's motion to consolidate this case with two other cases he has pending against TPS (Doc. 36) and motion for leave to amend his complaint in this case. (Doc. 37).  As a result of my decision in this order, both motions are moot and I deny them on that basis.

There are essentially two issues in this case on which all else depends. First, why has DH not been enrolled in TPS since the end of the 2005-06 school year. Second, whether her placement in EduCare, a child care/education center owned by the University of Toledo and used by TPS for placement of children with disabilities, was an appropriate placement for DH as of the start of the 2006-07 school year.

I find that, on the basis of undisputed (or insufficiently disputed) material facts that DH's parents are solely responsible for DH's failure to attend school. I also find that, as of the beginning of the 2006-07 school term, EduCare was an appropriate placement.[3]

DH attended EduCare as a pre-school pupil beginning with the 2001-02 school year. As of  the 2003-04 school year, DH was, in accordance with her Individual Education Plans (IEPs) in a self-contained classroom for pupils with multiple disabilities at EduCare. She attended that facility from then through the 2005-06 term.

Before the start of the 2006-07 school year, TPS decided to transfer DH to Larchmont Elementary School. Her parents opposed that transfer. On August 30, 2006, they filed their first due process administrative complaint against TPS, seeking to have their daughter remain at EduCare, rather than being assigned to Larchmont.

On receiving the complaint, defendant Thom Billau, then Director of Student Services for TPS, notified the parents he was holding places open for DH at both EduCare and Larchmont.

(Ex. 049029).[4] In other words, as of that date, had the parents been willing to do so, DH could have been re-enrolled in EduCare.[5]

---

[3] I also agree with TPS that prior court decisions preclude consideration of these issues in this case. But, in anticipation of an appeal and in an effort to avoid remand if the Circuit were to disagree with me, I adjudicate the merits of these two core issues.

The parents did not enroll DH in EduCare. Unquestionably, they would have been able to do so in August, 2006. Although, as discussed below, TPS notified the parents on August 13,2008, that DH had been withdrawn retroactively from TPS as of August 29, 2006, the record makes manifestly clear that the parents could have returned DH to EduCare as a pupil in good standing at the beginning of the 2006-07 school term.

Initial Hearing Officer (IHO) Sprenger, following a hearing on the parents' administrative complaint, issued an order stating, *inter alia*; that:

> 5 The least restrictive environment for the student's educational instruction is the Educare Center. Once the student is back in school, the parents and the IEP team will call an interim meeting to determine the present levels of performance of the student and short term objectives until such time the consolidated meeting above meets and develops a new IEP.

> 6. The student shall be placed in the MH classroom of Mary [sic] Martin or whoever is teaching her class when the student returns to school. The age of the students in the classroom will comply with OAC 3301-51-09(G)(3)(e)(i).

(Ex. M, p. 61).

On appeal to this court, I upheld the Administrative Order. *Bd. of Educ.of the Toledo City Sch. Dist. v. Horen*, 2010 WL 3522373, *29 (N.D. Ohio), *aff'd*, 10-4238 (6th Cir. May 26, 2011) (*Horen II*). In the meantime, the parents did not comply with the placement at EduCare that the IHO had ordered.

Contrary to plaintiff's contention in this case (which are that TPS had withdrawn DH as of August 29, 2006), the record shows repeated efforts by the District to have her returned to EduCare. On February 16, 2007, TPS wrote to the parents, calling their attention to the failure to

---

[4] Like defendants, I reference the exhibits with the numbers given them in the Administrative Record of Case 2101-2007.

[5] This was the placement they stated they preferred over Larchmont in their administrative complaint.

return DH to school. The letter asked, "Please advise whether [DH] will resume attending school at Educare, and if so, when that will occur." In addition, the letter notified the parents:

> At this point, as the child is not attending school at TPS, and TPS has neither been informed that she is attending another school nor received any paperwork indicating that she is being homeschooled, she is considered truant under Board Policy JEDA (a copy will be provided if you request). The District does not desire to pursue truancy measures, but must know whether [DH] is being educated. Please advise if you have made alternate arrangements for her education or when she will begin attending school in the placement ordered by the IHO.

(Tr. 557-58; Ex. 0, TOO102).

Instead of complying either with the IHO's order or the District's request to return DH to school, the parents sent an e-mail asserting that TPS was threatening them with truancy proceedings, DH was not being home-schooled, and she was being denied an FAPE. The parents also stated, however, that they looked forward to an interim IEP meeting. (Ex. 0, TOOI03-105).

On February 19, 2007, TPS e-mailed the parents, asking them to return DH to school so that staff could assess her present levels of performance before convening the interim IEP meeting. (Tr. 558-559; Ex. 0, TOO106). In response, the parents said DH would not return to school without a current IEP. They claimed they had safety concerns, but they did not describe what those concerns were. (Exh. O, T00112).

The parents thereby created a Catch-22 situation: they would not return their daughter even for a performance evaluation, which, in turn, would facilitate the effectiveness of the interim IEP meeting – but they also asserted they would not return her without an IEP.

In making this demand, the parents were ignoring and preventing accomplishment of the purpose of an IEP as highlighted in several cases. *See, e.g., D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir.2010) (citations omitted) (emphasis supplied) ("An IEP consists of a specific statement of a student's *present abilities*, goals for improvement of the student's

abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services.").

This was the first in a series of situations in which the parents, in response to TPS offers to assist in formulating in IEP, would respond with inappropriate demands that the District could not meet.

On February 20-21, 2007, TPS, trying to comply with the IHO order, proposed:

1. [DH] will attend school pursuant to the IRO's order on Wednesday and/or Thursday, February 21st and/or 22nd, so that school personnel may ascertain her present levels of performance.

2. In order to respond to your concerns regarding her safety prior to the development of the interim IEP, during the period of attendance described above, either parent or another caregiver designated by you may remain in school to monitor and observe [DH].

3. Following the attendance described above, TPS will convene an IEP team meeting on Friday, February 23rd, at 2:30 p.m.[a time the parents had suggested for an IEP meeting] for the purpose of developing an interim IEP. If there are any persons other that TPS personnel and yourselves that you would like to be invited to that meeting, please advise.

(Tr. 560; Ex. 0, TOOl14-1l5).

The parents instead offered to bring DH to school on March 2, 2007, with an IEP meeting immediately to follow that afternoon. TPS agreed. (Tr. 560-62; Ex. 0, TOOl16, T00120-121). However, when they appeared with their daughter, the parents refused to proceed because TPS's attorney would be attending the IEP meeting. (Tr. 562-68; Ex. 0, T00140-143). Plaintiff also stated he had refused to allow staff to evaluate DH the previous day because TPS's attorney *was not present*. (Id.).

There ensued a fruitless series of TPS attempts – each and every one that the parents frustrated in one way or another – to have an IEP meeting. The District scheduled IEP meetings on dates that the parents either selected or agreed to for April 24, May 31, and June 19, 2007.

(Tr. 569-573; Ex. N, p. 4-5; Ex.0, TOOI76, T00185, T00191, T00195, T00203-205, T00209-21O). Before each scheduled session, the parents made demands as preconditions with which TPS was not required to comply under IDEA. Among these was their renewed insistence that they would not engage in an IEP session unless permitted to record the meeting. Due to restrictions in the District's collective bargaining agreement with the Teachers Union, it could not allow recording to occur.

Because of the repeated cancellations resulting from the parents' unfulfillable demands, the District sent a letter on June 21, 2007, asking whether they would participate – or continue to refuse to participate – in an IEP meeting without tape recording and with the TPS attorney present. (Ex. 0, T00246-248; Tr. 573- 74). The parents did not respond.

Given the parents' refusal to cooperate in the District's efforts to have DH return to the EduCare placement, to which the parents had not previously objected, and as the IHO had ordered, in July, 2007, the District filed an administrative due process complaint in Case No. 1992-2007. (Tr. 548-550; Ex. 0, T00001-00006).[6]

On October 10, 2007, while this complaint was pending with the ODE, TPS sent the parents a draft proposed IEP for DH (Tr. 449-453; Ex. G, S00233- 238). TPS asked the parents to update the District as to DH's then current levels of performance and provide any recent reports from therapists regarding DH (Ex. G, S00233- 238). The parents left this letter unclaimed. (Ex. G, S00243).[7]

---

[6] The IHO, SLRO, I, and the Sixth Circuit all held that the parents' demands to record and bar the District's attorney from the IEP session were without lawful basis. The IDEA and its implementing regulations allowed TPS to have its attorney present at IEP meetings and permit TPS staff to refuse to be tape recorded at IEP meetings. See *Horen v. Board of Education*, 655 F. F.Supp.2d 794 (N.D. Ohio 2009), *aff'd*, Case No. 09-4254 (6th Cir. March 11, 2011), *reh. denied* (6th Cir. May 27, 2011) (*Horen I*).

[7] TPS mailed another copy to the parents on November 6, 2007. (Ex. G, S00245-250).

By letter dated October 22, 2007, the parents asked for an IEP meeting on October 30, or November 1, 2007. (Ex. H, S00258; Tr. 844). In response, the District sent a Parent Invitation for a meeting on November 1. (Ex. H, S00259; Tr. 845). The purpose of the meeting, the invitation stated, was to develop an interim IEP in accordance with the IHO's orders in Case 1872-2006. (*Id*.).

The parents responded in an e-mail with a complaint that the invitation was deficient because it did not state that the meeting was being convened at their request. (Ex. H, S00260; Tr. 849-850). Whereupon defendant Billau sent a revised invitation with that change. (Ex. H, S00264; Tr. 851). Billau told DH's teacher, Ms. Martin, of the scheduled IEP meeting. Ms. Martin, in turn, notified DH's services providers. (Ex. H, S00262;Tr. 851-852).

This meeting, too, did not go forward. That was so because on Sunday night, October 28, 2007, plaintiff e-mailed Billau demanding that before the November 1st meeting, TPS provide the parents with DH 's "educational information as well as charter, licensing and/or contract information about her stay-put placement, Educare." (Ex. H, S00261; Tr. 851).[8]

Plaintiff went to Billau's office on October 31st. Billau offered him DH's education record, but plaintiff declined to view it. (Tr. 594-596). Instead he left, and the parents cancelled the IEP meeting. (Tr. 593; Ex. H, S00265). Instead of participating in an IEP meeting on November 1st, plaintiff e-mailed Billau, TPS Board members, and TPS Superintendent Foley stating: "We will not be appearing for any meetings with TPS until such time as we have been assured that TPS will fully comply with the IDEA and Ohio law as well as provide us all the requested records at its own cost." (Ex. H, S00265).

---

[8] This demand appears to have set the stage for plaintiff's claim in this case that EduCare is not properly charted and does not operate in accordance with IDEA. This contention, in turn, underlies the contention that the parents have been justified in their failure to enroll DH at EduCare.

This is not a demand that TPS could meet, given the fact that the parents consider themselves – not the ODE or courts – the final arbiter of what constitutes full compliance with the IDEA. That this is so is apparent from their next communication with the District. On November 7th, the parents responded to the October 7th draft IEP and request to meet by restating their refusal to participate in an IEP meeting unless they were allowed to tape record and exclude TPS's attorney. (Tr. 454-455; Ex. G, p. S00257).[9]

About six months later, on April 7, 2008, the parents filed the due process complaint, which is the subject, in part, of this proceeding, Case 2102-2007. After the parents had amended their complaint, they appealed an adverse decision by the IHO to the SLRO. The SLRO remanded to the IHO for a hearing and findings to determine specified issues regarding the 2007-08 school year:

1. Whether TPS failed to conduct annual IEP meetings.

2. Whether TPS failed to provide IEPs to DH.

3. Whether TPS failed to participate in IEP meetings.

4. Whether TPS failed to provide to the Horens the information that a school is obligated by the IDEA and Ohio's operating standards to provide to parents to insure that parents are afforded an opportunity to participate in an IEP meeting.

5. Whether TPS failed to have required persons present at resolution sessions.

(IRO Davis Decision, 8/5/2011, p. 2-3)

This began another period of delay on the part of the parents.

The IHO set a prehearing conference for September 3,2009. The parents sought leave to file a motion to disqualify TPS's counsel, which the IHO denied. (*Id*. at 3).

---

[9] As previously noted, *supra* n. 5, neither the state hearing officers, I, nor the Sixth Circuit found the IDEA required TPS to satisfy these demands.

At a second prehearing conference on December 16, 2009, the IHO scheduled a hearing for March 19, 2010, with a disclosure conference to occur on March 4, 2010. At the March 4th conference, plaintiff stated he was, due to work commitments, only available for hearings on weekends. (*Id.*). The IHO reset the hearing for May 8, 2010, with a disclosure conference scheduled for April 29, 2010. (*Id.* at 5).

On April 22, 2010, the IHO received a letter from the parents stating that, due to urgent family issues, they would not be available until June, 2010. The IHO reset the hearing for August 28, 2010, with a prehearing disclosure conference on August 12, 2010. (*Id.*).

Due to the parents' claim of urgent family medical issues, the August 28th hearing became a disclosure conference. The IHO reset the hearing for October 9 and 23, 2010, with a disclosure conference on October 2nd. On the date of the disclosure conference, the parents, contrary to the IHO's order, failed to bring their exhibits. As a result, in place of a hearing, the parties treated the October 9th date as a disclosure conference. (*Id.*).

The hearing to address the issues remanded from the SLRO began on October 23, 2010. Because the hearing could not be concluded that day, the IHO agreed to resume on a Saturday in November. The parents stated they were only available Thanksgiving weekend. This was not acceptable to the IHO, who set December 4, 2010, for resuming. The hearing resumed on that date and also on January 8, February 5, and March 5, 2011. After the last hearing date, the IHO told the parents she not was available for any Saturdays in April. The IHO agreed to make herself available to complete the hearing on March 19, 2011. (*Id.*).

On March 18th, one day before the date for the final hearing, the parents notified the IHO of another family emergency which made them unavailable for the March 19th hearing. Despite

her earlier statement that she was not available on Saturdays in April, the IHO agreed to conclude the hearing on April 30, 2011. (*Id.*).

The hearing on April 30th ended early due to another family emergency. The IHO told the parents that the next hearing date would have to be on a weekday. At a May 3, 2011, prehearing conference, the parties agreed on a June 3, 2011, concluding date. (*Id.*).

However, in the late evening of June 2, 2011, the parents delivered an "Affidavit of Petitioners' Motion to ODE," which stated that they were only available for hearing on weekends or Friday evenings. (*Id.*) The IHO denied the motion and concluded the hearing on June 3, 2011, without the parents' participation. (*Id.*).

Following post-hearing briefing, the IHO issued her decision on August 5, 2011. In response to the five remanded issues, the IHO ruled:

> 1. TPS convened several IEP meetings for the purpose of preparing an IEP for DH, but the Horens impeded those meetings by their failure to participate unless they could tape-record and bar the attendance of TPS's attorney.
>
> 2. TPS did not provide any IEPs for DH, but the Horens' refusal to participate in the meetings, provide the evaluations ordered by IRQ Sprenger and SLRO Bohlen, cooperate with the reevaluations ordered, and return DH to school, prevented the development of the IEPs.
>
> 3. TPS did not participate in IEP meetings, but was prevented from doing so because of a TPS policy that tape-recording of IEP meetings was only permitted by agreement of the teachers and the Horens would not agree to proceed with the meetings unless they could tape-record.
>
> 4. TPS did not provide the most recent version of "Whose IDEA is This" to the Horens, but the Horens failed to demonstrate that this impeded DH's right to FAPE; significantly impeded their opportunity to participate in the decisionmaking process; or caused a deprivation of education benefits.
>
> 5. TPS had the required persons present at the November 14, 2007 resolution session. TPS did not have the required persons present at the May 8, 2008 resolution session, but the Horens failed to demonstrate that this impeded DH's right to FAPE; significantly impeded their opportunity to participate in the decision-making process; or caused a deprivation of education benefits.

(*Id*. at 25-27).

For these reasons, the IHO found TPS not liable for a lack of a FAPE for DH. (*Id*. at 31). On December 2, 2011, the SLRO affirmed the IHO's decision. (Id.).

In this case, the parents have appealed the SLRO's decision. They have, as well, brought additional claims against TPS and Billau. Defendants move for, and for the following reasons are entitled to summary judgment on all of the remaining claims.[10] Doing so, I also deny plaintiff's motions for partial summary judgment, to consolidate, and for leave to amend the complaint.

## Discussion

### 1. Appeal of SLRO's Decision
### Affirming the IHO's Decision

#### Standard of Review

The standard of review for both procedural and substantive issues in an appeal from and administrative determination under IDEA is a "modified *de novo* review." *Burilovich v. Bd. of Educ. of Lincoln Consolo Schools*, 208 F.3d 560, 567 (6th Cir. 2000). As stated in that case:

> In a case involving a motion for summary judgment, the court should still apply modified de novo review, but must ensure that there are no genuine issues regarding the facts essential to the hearing officer's decision. *See[Doe v.] Metropolitan Nashville Pub. Sch.*, 133 F.3d [384,] 387 [6th Cir. 1998)]. In rendering its decision, the court may still rely upon the hearing officer's presumed educational expertise, as long as the material facts underlying the officer's determination are not in dispute.

*Id*.

Before beginning my issue-by-issue review of the SLRO's decision in light of this standard, I emphasize that the pertinent events and the course they took are not in dispute.

---

[10]  I granted defendants' motion to dismiss some claims in an earlier decision. *Horen v. Bd. of Educ. of the Toledo Public Schools*, 2012 WL 3808902 (N.D. Ohio,).

Contrary to the contention which makes up the bulk of both his motion for partial summary judgment and opposition to the defendants' motion for summary judgment, TPS did not withdraw their daughter on August 27, 2006, and thereby preclude her from the benefits of the IDEA.

Instead, she remained a pupil – albeit one who was not in attendance, until the District sent a letter to the parents on August 13, 2008, that DH had been withdrawn effective August 28, 2006.  (Doc. 33-4, at 3).[11]

Likewise, the record which TPS has produced with regard to the status, good standing, and qualifications of EduCare to act as a suitable placement for DH is not, contrary to the plaintiff's suppositions and assertions, in dispute.

Plaintiff has not otherwise contested any of the material facts, as summarized in the preceding section. Consequently, this case is ready for consideration on summary judgment.[12]

### i.  The Parents Impeded the IEP Process

The SLRO found:

> 1. TPS convened several IEP meetings for the purpose of preparing an IEP for DH, but the Horens impeded those meetings by their failure to participate unless they could tape-record and bar the attendance of TPS's attorney.

> 2. TPS administratively withdrew D.H. from the district in 2008 due to nonattendance.

> 3. The effective date of D.H.'s withdrawal was made retroactive to August 29, 2006, which was the beginning of the 2006-2007 school year. Attached as Exhibit A is a true and accurate copy of the letter I sent to D.H.'s parents, dated August

---

[11] Students are subject to withdrawal after they are absent for least 21 consecutive days and the absences are unexcused. **Error! Main Document Only.**

[12] As TPS suggests, it is appropriate to consider related issues which ¶ 31(a)-(g) plaintiff's complaint raises together, rather than severally.

13, 2008, informing them of D.H.'s withdrawal. The date of August 28, 2006 contained in the letter is a typo. It should have read August 29, 2006.

4. At the time TPS withdrew D.H. in 2008, she had not attended TPS since the end of the 2005-2006 school year.

Except for plaintiff's claim, made solely in light of the date Murphy referenced in his letter, there is no basis whatsoever in the record to support the contention that DH was no longer enrolled with TPS as of August, 2006. Had the situation been otherwise, the District hardly would have undertaken the extensive and continuing efforts that it made to have the parents return her to school in accordance with the IHO's order. Plaintiff's efforts to make the record of the facts other than what they are does not suffice to create a jury question on the issue of when DH was no longer enrolled and whether, had her parents comply with the "stay put" order to return her to EduCare, she would have been allowed back in. No rational trier of fact could find that TPS would not have permitted DH to resume attending school.

In ¶ 31(a), (j), (g), the complaint alleges this finding was erroneous because:

(a) By permitting the HO to rule in favor of the district, by permitting it to put on a defense that fell outside the applicable statutory time limits under the IDEA that alleged the parents impeded it from performing its obligations under the IDEA. (The district failed to exhaust its own administrative remedies as to such a claim.)
* * * * *
(j) By finding that HO was correct in determining parents were obligated, had a duty, to participate in IEP meetings.
* * * * *
(g) By finding, based on a preponderance of the evidence, that the parents impeded the IEP process.

These three findings each relate to the IHO's finding that the parents were unwilling to participate in creating an IEP for DH, and thus TPS was neither responsible nor liable for failing to provide an FAPE to DH.[13]

---

[13] I reject the plaintiff's contention about TPS being allowed to present, without exhaustion, a defense outside the limits of IDEA. On the contrary, TPS simply presented evidence as to the

As noted, there is no genuine dispute of fact with regard to the record, which indisputably shows, *inter alia*: 1) TPS repeatedly scheduled IEP meetings to develop an IEP for the period including the 2007-08 school year; and 2) the parents' unilateral actions repeatedly caused the meetings not to go forward.

In doing so, the parents failed to fulfill their duty to participate in the IEP process, and thereby impaired that process irredeemably. They cannot contend they did not have such duty, or that they were unaware that they did, in light of my decision in *Horen I, supra*, 655 F. Supp. 2d at 805 (N.D. Ohio 2009), in which I stated: "The parties have a duty to participate in the IEP process." *See also CG v. Five Town Community Sch. Dist.*, 513 F.3d 279, 288 (1st Cir. 2008) ("Congress deliberately fashioned an interactive process for the development of IEPs."); 20 U.S.C. § 1414(d)(l)(B); 34 CFR 300.321(a).

Where a party has acted to frustrate formation of an IEP, a court must consider the totality of the circumstances when adjudicating a parent's claim that failure to create an IEP deprived a child of the right to an FAPE. As the court stated in *C.G. ex rel. A.S. v. Five Town Community School Dist.,* 513 F.3d 279, 286 (1st Cir. 2008) (citations omitted):

> This is especially true where the school system has acted expeditiously and the development of a final IEP has been frustrated by the parents' refusal to cooperate fully in the collaborative process. In such circumstances, it would be wrong to put blinders on a reviewing court and restrict its inquiry to the partially completed IEP.
>
> When this sort of scenario arises, the court should proceed to consider issues such as the way in which the IEP process unfolded and the relative responsibility of the participants for the breakdown of the process. In exploring such issues, the court is entitled to look at the totality of the circumstances, consider extrinsic evidence if necessary, and judge the parents' claims accordingly.

---

facts, which the IHO and SLRO found credible; on the basis of those facts, TPS was entitled to prevail on its defense (namely, that it was not responsible for the lack of an FAPE).

*See also Doe v. Defendant 1*,898 F.2d 1186, 1189 n.1 (6th Cir. 1990) (parent could not complain that school district failed to complete a timely IEP when IEP's non-completion was attributable to parent's actions).

TPS convened at least four IEP meetings that the parents stymied by their unwarranted refusal to proceed unless they were allowed to tape record and keep TPS's attorney from the meeting. In addition, two days before the last scheduled IEP meeting they submitted demands for production that TPS could not meet.

Even in the face of such persistent non-cooperation TPS prepared a draft proposed IEP. At no time did the parents find any specific fault or failing with the draft. Nor did they respond to TPS's request for information. Instead, they ignored both the proposal and request. Their doing so kept the cornerstone of an IEP from the builder's hands.

Even without a completed, jointly created IEP, the District made clear its willingness to provide an FAPE to DH when it: told the parents it was keeping placements open at EduCare and Larchmont; repeatedly sought to convene IEP meetings ; expressed a willingness to complete an IEP; sought participation from the parents; and prepared the draft proposed IEP. The parents chose to ignore these efforts; their doing so does not change the fact they were made, or the consequences of that fact – namely, that they alone are responsible for the lack of an FAPE for DH.

Courts confronted with similar circumstances have regularly refused to impose liability on school district defendants. *See e.g. 1.1. v. Dist. of Columbia*, 768 F. Supp. 2d 214, 219 (D.D.C. 2011); *K.G. v. Sheehan*, 2010 WL 5644782 (D.R.I.); *LeSesne v. Dist. of Columbia*, 2005 WL 3276205 (D.D.C.).

The SLRO correctly allocated responsibility for the lack of an FAPE where it belonged, which was not on TPS.

## ii. The SLRO Did Not Relieve the IHO
## of the Duty to Rule on the Basis of the Law

In ¶ 31(e) of the complaint plaintiff alleges that the SLRO erred:

(e) By failing to require the HO to make a ruling based on the law and fact
regarding the rights of the child as separate from those of the parent, and when it
was determined the district failed to provide FAPE to the child.

Plaintiff argues that the IHO failed to address DH's rights as separate from those of the

parents. The problem with that contention is that, by impeding the IEP process so successfully,

plaintiff and his wife deprived their daughter of her right to an FAPE. They were in a position to

protect her rights; they chose not to do so. In focusing on their conduct, the hearing officers

necessarily were taking into account the daughter's right to an FAPE. In determining that the

parents' actions deprived her of that right, the hearing officers also necessarily were determining

how the deprivation of her right to an FAPE came about.

The division of interests on which plaintiff bases this claim does, at least in the

circumstances of this case, not exist. No error occurred when the SLRO upheld the IHO's

findings and conclusions, which were well-founded and within, not outside the law, on remand.


## iii. The Parents' Demand to Record Was a Fact
## Pertinent to, But Not the Basis for the SLRO's Decision

The complaint, ¶ 31(c), asserts error:

(c) In failing to find the HO's order went against her own decisions throughout
the hearing wherein she stated the issues did not involve tape recording, then
made much of her decision based on matters surrounding tape recording.

The issue in this case and appeal is who was responsible DH being left without an FAPE.

One circumstance contributing to that situation was the parents' persistent and unjustified

demand to be able to record the IEP sessions. This was something the TPS could not accommodate in light of its duties under the collective bargaining agreement with the Union.

Had the parents been willing to accept that fact, which is indisputable, they would not (and should not, in any event) have refused to go forward with the IEP sessions. Their unilateral interpretation of their "right" to record, which was counter-factual, and their placing their "right to do so ahead of their daughter's right to an IEP" were facts which both hearing officers were fully entitled to take into account in assessing responsibility for the lack of an FAPE for DH.

Insistence on recording was not the basis for the decision. The basis for the decision was, rather, that, among other obstructive tactics, the parents wrongfully conditioned their daughter's IEP on their non-existent "right" to record the proceedings.

The rights at stake belonged to DH, and they were real. The "right" that the plaintiff and his wife insisted on asserting, even to the point of derailing the IEP process, was not theirs, and it was unrealistic of them to act as they did when they did not get their way.

Consideration of this circumstance was proper, and involved no error on the part of either hearing officer.

### iv. Potential Hearing Dates Were Reasonable

Paragraph 31(b) of the complaint alleges the IHO erred:

(b) In failing to find the IRO did not conduct all hearings at a time and place reasonably convenient to the parents and the child, and was inconsistent in her decisions regarding procedural matters.

There is no factual basis for this contention whatsoever. Indeed, the IHO was unusually accommodating to the parents. The IHO worked with the parents to find dates and places that

were reasonably convenient to them. This included scheduling sessions on weekends to suit the parents' contentions that they were not available otherwise, and rescheduling sessions in response to their requests for such accommodation.

There was nothing arbitrary or abusive in her exercise of discretion – in consultation with the parents – with regard to scheduling matters.

Moreover, the SLRO was entirely correct in stating:

[P]arents must understand that the word "reasonable" cannot be ignored. This matter was originally scheduled for a hearing to begin in May of 2010. It did not conclude until June of 2011.

These delays were allowed by the IRO due to medical emergencies of Petitioners' family members and also to accommodate Mr. Horen's work schedule that would only allow for weekend hearing.

### v. The SLRO Was Within his Discretion in Declining to Accept Additional Evidence

Paragraph 31(d) claims the SLRO erred: "(d) In failing to permit the parents an opportunity to submit additional evidence as required by Ohio law."

This contention apparently relates to the SLRO's refusal to consider certain evidence that the parents proffered in their Motion to Supplement Record. The evidence included a DVD containing the parent's exhibits, a CD, rebuttal testimony of plaintiff, an affidavit of DH's caregiver, and all evidence that was proffered and denied admission throughout the hearings.

In response to this proffer, the SLRO stated:

The DVD was not included as part of the record. Individual exhibits were addressed individually at the hearing on June 3, 2011. The CD, affidavit and testimony of Mr. Horen were not previously disclosed to School District, nor were they provided the opportunity at hearing to cross-examine with respect to the proposed additional evidence.

The record supports the SLRO's assessment and refusal to admit the evidence into the record. Although an SLRO can allow additional evidence, it is entirely proper for an SLRO to decline, in the exercise of discretion, to do so. No manifest error occurred, and the ruling was procedurally proper.

Plaintiff had not provided some of the evidence to defendants in advance of the hearing. No error occurs when a tribunal declines to allow last-minute sandbagging. *Cf. United States v. Johnson,* 815 F.Supp. 492, 494 (D.D.C. 1993) (rejecting, in part, defendant's proffer during trial of previously undisclosed evidence).

The record before both hearing offices was already vast and plaintiff has not shown how refusal to let these additional items into the record would have had any effect on the outcome or otherwise prejudiced him.

There is no merit to this contention.

## 2. Plaintiff's ADA and § 504 Claim

Plaintiff claims TPS discriminated and retaliated against DH in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, on the basis of her disabilities because it has failed to provide her with educational and related services. (Doc. 5, ¶¶ 6, 23, 24).

The factual allegations plaintiff offers in support of these claims are:

•  TPS improperly withdrew DH from TPS and withheld documents regarding her withdrawal. (*Id.* ¶¶ 3, 4, 7, 9, 11, 12, 28);

•  TPS required DH to attend EduCare to receive services, which is not operated in accordance with applicable laws, allows medical students access to the children, and conducts "covert research" on them.

*Id.* at ¶¶ 11, 25.

### a. Failure to Exhaust

Defendants argue that plaintiff has not met the requirement of exhausting his administrative remedies with respect to these claims. I agree, in light of the doctrine that "whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings." *MT. V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006); *see also SE. v. Grant Co. Bd. of Educ.*, 544 F.3d 633, 641-43 (6th Cir. 2008); *Sagan v. Sumner County Bd. of Educ.*, 726 F. Supp. 2d 868, 878 (M.D. Tenn. 2010) ("Regardless of how a claim is couched . . . any claim that relates directly to a student's access to an FAPE is subject to the exhaustion requirement.").

The administrative complaint in Case 2102-2007 leading to the decisions under review in this case did not include these claims, though they relate to DH's right to an FAPE. [14]

Because plaintiff has not exhausted his administrative remedies, these allegations cannot serve as the basis for his § 504 orADA claim. Accordingly, TPS is entitled to summary judgment, without prejudice to plaintiff's rights in any other venue or proceeding.

### b. Statute of Limitations

Alternatively, defendants argue that the two-year limitations period, *Southerland v. Hardaway Mgt., Inc.*, 41 F.3d 250 (6th Cir. 1994); *Hall v. Knott Cty. Bd. of Educ.*, 914 F.2d 402,407-408 (6th Cir. 1991) , bars plaintiff's §504 and ADA claims, insofar as plaintiff asserts those claims on behalf of DH.

Defendants argue that plaintiff's claims *vis-a-vis* DH arose when she was administratively withdrawn in 2008. Plaintiff knew of this fact from the letter of August 13,

---

[14] Plaintiff has raised these issues in later administrative complaints: namely, Case 2609-2011 and 2703-2012.

2008. A claim that TPS discriminated against DH by virtue of her withdrawal from TPS had to be filed within the next two years. It was not.

Plaintiff claims TPS acted unlawfully under the ADA and § 504 when it withheld documents following his October 28, 2007, demand for documents relating to EduCare's allegedly unauthorized status as a child care facility associated with TPS. Though TPS may not have given plaintiff a formal rejection statement,  the two-year statute of limitations period ran well before he filed this case more than four years later.[15]

Likewise, plaintiff's claims regarding EduCare and his allegation that TPS discriminated and retaliated against DH by "requiring" her to attend EduCare to receive services arise out of the 2007 and 2008 school years.[2] Thus, this claim must have been brought, at the latest, within two years of the end of the 2008-09 school year. It was not.

The ADA and § 504 claims are, accordingly barred by the statute of limitations.

### c. Res Judicata

Plaintiff expends considerable effort arguing that TPS denied DH her right to an FAPE by withdrawing her from its system in August, 2006. In addition, he claims that EduCare was, for various reasons, not qualified to serve as a proper placement for DH.

---

[1] No reason appears, moreover, in the record as to why plaintiff could not have asserted his claim about denial of access to information in a timely filed due process complaint. *See J.W. ex rel. J.E.W. v. Fresno Unified School Dist.*, 570 F.Supp.2d 1212, 1220 (C.D. Cal. 2008) (finding lack of jurisdiction re. IDEA appeal because "Plaintiff fail[ed] to establish that the records issue was exhausted at the administrative level.")

[2] That this aspect of plaintiff's discrimination and retaliation claims relates to the 2007-08 (and, apparently, 2008-09) school term, rather than the 2006-07 term is because that's how plaintiff frames the same contention in his motion for partial summary judgment. (Doc. 28, p. 1) (stating that TPS's actions with regard to EduCare placement "affected DH's right to an education for both the 2007 and 2008 school years.").

Aside from the fact that plaintiff bases his contentions as to these issues on speculation and an insubstantial inferential chain, while defendants have clearly established facts on theirs, plaintiff cannot prevail as to either contention because prior judicial proceedings have adjudicated them against him or parties in privity with him.

As to each, there has been claim preclusion, because each has been the subject of "[a] valid, final judgment rendered upon the merits," which 'bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Grava v. Parkman Twp*., 73 Ohio St.3d 379, 382 (1995). Likewise, there has been issue preclusion, whereby "a party and its privies are precluded from re-litigating facts or issues previously litigated and decided in a prior suit by a court of competent jurisdiction." *Id.* (citing *Thompson v. Wing*, 70 Ohio St.3d 176 (1994)).

### i. Parents' Failure to Have DH in School

Defendants have accurately laid out the sequence of decisions in which hearing officers and courts have found, as a matter of fact in dispute, that the parents kept DH from attending school during the 2006-07 term and thereafter. (Doc. 32, at 7-9 of 19):

**Case No. SE1872-2006 [Involving, *inter alia*, parents' challenge to placement at Larchmont Elementary School]:**

• IHO Sprenger, Order (10/30/2006), p. 2: "Petitioners removed the child voluntarily from the then-current placement based upon the allegations set forth in their letter of August 28, 2006."

• SLRO Hagen, Decision (10/5/2007), p. 43: "During the pendency of this action, [D.H.'s] parents have refused to send her to either of the placements made available to her by TPS, while the educators, who seem ready and *willing to educate D.H., have spent more time dealing with the Horens'* numerous complaints than they have educating D.H., albeit because the parents withdrew D.H. from school and didn't give them the opportunity."

• *Horen II, supra*, 2010 WL 3522373, *29 (N.D. Ohio): "[D.H.'s] lack of education since [2006] has been a direct consequence of her parents' actions, not the Board's."

**Case No. SE1992-2007 [TPS complaint/suit challenging claim of entitlement to record proceedings and exclude TPS's attorney from attending IEP sessions]:**

- IHO Rohrbacher, Decision (1/3/2008), p. 10: "The Parents have not sent the student to school since the filing of Case No. SE1872-2006 in August of 2006."

- SLRO Bohlen, Decision (07/07/2008)

- "Parents . . . must either return [D.H.] to the Educare facility or inform the District if she is being home-schooled or otherwise educated ... If this does not occur the District should seek out a court of competent jurisdiction to order the Parents to so act." p. 1

- "Student has not attended school since August, 2006 when parents filed their request for due process." p. 4

- "The IHO had subject matter jurisdiction regarding the issue of whether Parents had neglected to send Student to school. This was not a truancy proceeding. The IHO had jurisdiction to determine that the child was not in school, and that Parents need to bring their child to school so that she may receive the education that the District offers her or advise the District that she is being home-schooled or otherwise educated." p. 8

- *Horen I, supra.*, 655 F.Supp.2d 794 (N.D. Ohio 2009):

- "The parents have withdrawn [DH] from TPS." *Id*. at 797.

- "Due to the plaintiffs' continuing dispute with TPS, and their insistence that they have the right to record IEP meetings and bar TPS's counsel from attending those meetings, the plaintiffs have refused to have their child attend school." *Id*. at 804.

- "As the IHO and SLRO acknowledged, they were without jurisdiction to adjudicate whether the child was, due to the plaintiffs' actions, truant." However, the SLRO concluded that the IHO could properly determine whether the child was attending school or otherwise being educated in accordance with the law. The hearing officers could likewise direct the parents to bring the child to school so that she could be educated there or confirm that she was being otherwise educated." *Id.* at 805.

**Case No. SE2102-2007 [The instant case]:**

- IHO Davis, Decision (8/512011):

- "D.H. has not attended school since June 2006. Petitioners have not advised TPS as to her educational status, except to confirm that she was not being homeschooled. TPS placements were available for D.H. for the 2007-2008 school year." p. 17

- "As previously noted, [IHO] Sprenger ordered the parents to first return the student to EduCare (the least restrictive environment) prior to scheduling an interim IEP meeting." p. 28

- "[T]he parents refused to return the student to school until an IEP was developed, contrary to the IHO [Sprenger] order." p. 28

- SLRO Mues, Decision (12/212011)

    - "School District requested that student return to school so that present levels of performance could be assessed before convening an IEP meeting. Parents refused to return student to school without a current IEP and due to safety concerns." p. 8

    - "[T]his SLRO agrees with the IHO that parents ... failed to return student to school and prevented the development of the IEP." p. 10

**Case No. 2609-2011 (currently on appeal with the Court in Case No. 3:12-CV-2224)**

- SLRO Bohlen, Decision (61212012):

    - Parents have refused to return D.H. to school since the end of the 2005-06 school year "due to their safety concerns." p. 7

    - "Since Parents' persistent refusal to return the child to school (and no court having been able to accomplish this), the child has mainly been educated by Parents in the home[.]" p. 8

    - "The Student's status with the District after Parents failed to return her to school for the 2006-2007 school year was inactive, as of August 28, 2006." p. 11

    - All of the parents' actions "indicated their complete lack of interest in enrolling their child in the District." p. 19

**Case No. 2703-2012:**

- IHO Rohrbacher, Decision (2/1612013)

    - "The parents' contention has been that they took no action to withdraw their daughter from TPS and, therefore, TPS withdrew the child. What is not in dispute is that the child has not attended Toledo Public Schools

since 2006, and the parents have not returned the child to TPS from 2006 through the 2010-2011 school year. The District has encouraged the parents to return the student to school." p. 5

- "It does not make any difference how the student came to be listed as no longer enrolled at TPS when it is undisputed that the student has not attended the school district since 2006." p. 9

What matters most for *res judicata* are my statements in *Horen I* and *Horen II* with regard to who was responsible for the failure of DH to resume her education with TPS beginning with the 2006-07 school year.

As noted above, in *Horen II*, I stated, adopting the finding of the SLRO, "As the SLRO pointed out, her lack of education since that time has been a direct consequence of her parents' actions, not the Board's." 2010 WL 3522373, *29 (N.D. Ohio). The issue of responsibility for the failure to attend EduCare, which was the "stay put" placement which the parents had sought, was pertinent in that case with regard to the issue of relief (the parents having prevailed with regard to the failure to provide an FAPE). In determining to award compensation for the violation, I had to determine whether such relief was appropriate in light of the facts before me. *Id*.

I concluded that monetary relief was not appropriate. I based that decision on the fact that TPS had, despite its other failings in that case (which are unrelated to what is at issue here), notified the parents that it was keeping placements at both Larchmont and EduCare open for the 2006-07 term. This, coupled with the fact, which I concluded the SLRO had summarized properly (as quoted above), that the parents had kept DH from returning to her stay put placement at EduCare, caused me to find that no monetary relief was appropriate. *Id.*

The parents' actions in failing to return DH to Educare was, as part of the overall totality of the facts in that case, dispositive, in fact, on the issue to which it related – namely, the parents'

demand for monetary compensation from the Board. So I agree with TPS that my finding has preclusive effect on that issue in this case.

In *Horen I, supra.*, 655 F.Supp.2d at 794, the issue of whether DH was lawfully not attending school was also at issue. Indeed, underlying the IHO's order that the parents either have their child attend school or affirm that they were home schooling her (which the SLRO affirmed) was the fact that the parents had not brought DH to school. That was a predicate fact from which the IHO's order and the SLRO's affirmance (and mine as well) of that order flowed. As I stated, "Due to the plaintiffs' continuing dispute with TPS, and their insistence that they have the right to record IEP meetings and bar TPS's counsel from attending those meetings, *the plaintiffs have refused to have their child attend school.*" 655 F.Supp.2d at 804 (emphasis supplied). Had that not been so, there would have been no basis for the IHO to order them either bring DH to school or show that they were educating her through home schooling.

### ii. Medical Experimentation at Educare

Plaintiff claims that EduCare is a not a suitable placement because, according to him, EduCare was not operating with a charter classification under O.R.C. § 3301, medical students were permitted to conduct human experiments at Educare, and TPS has not accurately reported its status to the ODE and has failed to provide information about EduCare to the plaintiff.

In contending that *res judicata* precludes consideration of plaintiff's challenge on the issue of the suitability of EduCare, defendants point to *Horen v. Bd. of Educ. of the City of Toledo Public Schools*, 2010 WL 3064394 (Ohio App.). Two issues in that case are pertinent to and preclusive of consideration of the same issues here.

The first of these is plaintiff's contention the EduCare is a medical facility and permits medical students to conduct human experiments. With regard to those contentions, the court

found no evidence in the record of any such activity. *Id.* at *2 (claim of medical experimentation unsupported in record), *16 ("the facts alleged by appellees related to medical experimentation are not supported by the record of this cause. Nor does the record support the allegation that Educare is some type of medical research facility.").

The second issue is the lawfulness of EduCare's status under Ohio law. In the state case the plaintiff urged the court to find that state-law immunity under O.R.C. § 2744 was not available because the case was governed by federal, not state law. *Id.* Rejecting this assertion, the court stated, "The evidence in the record does support a finding that Educare is a public school operated by a political subdivision, TPS, and, as a result, falls within the parameters of R.C. Chapter 2744."

Thus, with regard to the issues of medical experimentation, whether EduCare was a medical facility, and whether EduCare was a public school operated by TPS, *res judicata* precludes re-litigation in this case.

### d. The Parents are Responsible for
### The Failure of DH to Attend School

Even if prior judicial decisions do no preclude consideration of the question of who was responsible for DH not attending school – and thus, not receiving the benefits of an FAPE – indisputable facts make clear that the parents bear sole responsibility for that circumstance. This is true, despite the plaintiff's vain efforts to re-read the record otherwise.

These facts are indisputable:

- DH has not attended a TPS facility since the end of the 2005-06 school term;

- She was at that time a pupil at EduCare;

- TPS wanted to transfer her to Larchmont Elementary School for the 2006-07 school year;

- The parents objected to the transfer, and prevailed at the State hearing level in their objections to a transfer from EduCare;

- TPS kept placements at both Larchmont and EduCare open for DH during the 2006-07 school year, and notified the parents of that fact;

- In their action protesting the transfer to Larchmont, the parents expressed a desire that DH remain at EduCare; [17]

- The IHO ordered the parents to enroll DH in EduCare;

- The parents did not do so;

- TPS sought to conduct IEP sessions, but were not able to do so due to the parents' failure to cooperate and participate in those sessions;

- Without an IEP, TPS could not determine what placement would constitute  the least restrictive environment for DH; and

- TPS administratively withdrew DH from the district in 2008 due to non-attendance.

The gist of the plaintiff's argument in the face of these incontestable facts is that TPS withdrew DH from its school system as of August 29, 2006, the beginning of the 2006-07 term.

While, as noted, the letter of notification of withdrawal referenced 2006, no rational jury could find anything other than that was a typographical error – the actual date of withdrawal was 2008 – retroactive for administrative purposes to 2006. In the meantime, nothing either party did

---

[17] *See Horen II*, 2010 WL 3522373, 4 ("In [their] complaint, the Horens invoked D.H.'s right to 'stay put' at her current placement, EduCare").

or sought to do resulted in the belief or understanding that DH was no longer deemed a TPS pupil.

There is no genuine dispute as to the material fact that the parents, and only the parents, were responsible for the failure to DH to obtain an FAPE. Even if *res judicata* does not preclude the plaintiff from prevailing, defendants are entitled on the merits to summary judgment as to this aspect of plaintiff's § 504 and ADA claims.

### e. EduCare is a Part of TPS

In response to defendants' motion for summary judgment, plaintiff argues principally that EduCare is not within the TPS system. He bases this argument on his contention that, contrary to defendant's evidence and contentions (and the finding of the state court of appeals, *supra*) that EduCare is not affiliated with Glendale-Feilbach, an elementary school within TPS. Plaintiff points to the fact that the two facilities are at different locations within the City of Toledo. He claims that the fact that Principal at Glendale-Feilbach is the District's administrative head of EduCare is immaterial.

Plaintiff's contentions, which are either speculative, conclusory, or immaterial, fail in the face of the affidavits of TPS personnel with knowledge of the relationship between Glendale-Feilbach and EduCare. The affidavit of Janice Kilbride, TPS Chief Academic Officer, shows conclusively that none of plaintiff's conclusory contentions about the status and of EduCare operation, including its status as a "medical facility," which he has not supported with admissible evidence, is correct. (Doc. 33-1).

Nothing about EduCare gives rise to a cause of action against TPS under § 504 or the ADA. Defendants are entitled to summary judgment as to plaintiff's claims as they relate to EduCare.

### f. TPS Did Not Discriminate Against DH

Plaintiff claims that TPS discriminated against DH on the basis of her disability in violation of § 504 and the ADA.

To prevail on a § 504 discrimination claim, plaintiff must show:

(1) The plaintiff is a "disabled person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his . . . disability; and (4) The relevant program or activity is receiving Federal financial assistance.

*Horen I*, 655 F.Supp.2d 801 (quoting *Sandison v. Michigan High School Athletic Assn., Inc.*, 64 F.3d 1026,1031 (6th Cir. 1995)).

Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

As with all claims of discrimination, plaintiff, to establish a *prima facie* case, must show differential treatment between his daughter and similarly situated individuals. *See, e.g., id.* at 802 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577,583 (6th Cir. 1992)). To meet his burden of pointing to a comparable person whom he alleges TPS treated differently, plaintiff must, as I stated in *Horen I*, show:

[T]he comparable, similarly situated child has substantially the same degree of learning difficulties, to the extent applicable, physical impediments and behavioral problems contributing the child's learning disability and a substantially equivalent IEP which, in the case of the comparable, was implemented, where it was not in the case of the child on behalf of whose relief was being sought.

*Id.* at n.8.

Plaintiff has failed to point to any similarly situated pupil whom TPS treated differently than it treated DH. He has thus failed to meet his initial burden of establishing a *prima facie* case.

Defendants are entitled to summary judgment on plaintiff's § 504 and ADA claims for discrimination.

### g. TPS Did Not Retaliate
### Against DH or Her Parents
.

Plaintiff claims that TPS retaliated against DH and her parents because it viewed the parents as troublemakers and they otherwise had been persistent in their assertion of their daughter's rights under IDEA.

To make out a *prima facie* claim for retaliation, plaintiff must show:

> (1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action.

*Lauren W ex rel. Jean W v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Plaintiff has not shown that either DH or he was affected by an adverse action.

With regard to DH, TPS's decision in 2008 to withdraw her from its system as of August 29, 2006, was an administrative act that simply caused its records to reflect the reality of her absence for the intervening two years. Nothing TPS did caused her non-attendance; as noted above, her parents were directly and solely responsible for DH's non-attendance. Any resulting adverse effects are, therefore, attributable only to them, and not to TPS.

Plaintiff contends that the mother was told at one point that all she had to do was to enroll DH in any school. When Ms. Horen took DH to a nearby elementary school, she was told that she could not enroll DH there.

The result of this isolated effort does not constitute an adverse action. There can be no question that enrolling DH in a conventional elementary school would not be either suitable for DH, or, acceptable to her parents. After all, what started the series of complaints and lawsuits was the effort of TPS to do just that, by transferring DH to Larchmont. In light of the parents' opposition to Larchmont, no rational jury could give credence to the *bona fides* of an attempted enrollment at a neighborhood school, or find that Ms. Horen had undertake it in good faith.

In any event, plaintiff has not established that the person who told Ms. Horen she could make that effort was speaking with authority to make that decision. Thus, the statement attributed to that individual is hearsay, and not admissible.

Thus, DH suffered no adverse action at the hands of TPS.

Plaintiff claims that adverse action occurred when TPS "required" DH to attend EduCare to receive services. It was the IHO, rather than TPS, who directed that EduCare serve as the "stay put" facility. During the period that the parents were disregarding that order, the District only sought to have DH brought to EduCare (or, perhaps, elsewhere), for purposes of an updating of her condition in preparation for an IEP session. This did not create an impermissible condition on the provision of services; to the contrary, it was a means by which TPS sought to facilitate the availability of services. Here too, the fact that that effort was fruitless is attributable to the parents, not TPS.

The parents have not suffered any cognizable adverse actions. Accepting as true the allegation that a former TPS attorney referred them as troublemakers in the legal and educational community and referred to Ms. Horen as "crazy," such random, isolated statements do not rise to the level of adverse action sufficient to get the retaliation claim to the jury. *Cf., Kavanaugh v. Miami-Dade County*, 775 F.Supp.2d 1361, 1370 (S.D. Fla. 2011).

In any event, plaintiff has not shown a causal connection between the isolated comments and TPS's actions regarding himself and his daughter. There must be a temporal or other link between hostile terms and the alleged adverse action. *See, e.g., Munoz v. Parpart*, 2003 WL 23198864, *3 (D.Neb.).

### 3. The Inidividual Defendants

### a. Thom Billau

### i. Fraud/Fraudulent Misrepresentation

Plaintiff claims Mr. Billau engaged in fraud or fraudulent behavior.

To prove such claim, plaintiff must show:

> (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) followed by justifiable reliance upon the representation or concealment by the other party, and (6) a resulting injury proximately caused by the reliance.

*Funk v. Durant*, 155 Ohio App. 3d 99, 103 (2003).

I agree with defendants' argument that plaintiff has failed to meet the heightened pleading requirements for claims of fraud under Fed. R. Civ. P. 9(b). As noted by the Sixth Circuit, "at a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873 (6th Cir. 2006).

Plaintiff's complaint fails to pass this test. Nothing in his opposition to defendants' motion for summary judgment cures this deficiency. Mr. Billau is entitled to summary judgment on this claim.

### ii. Defamation

Plaintiff has not directly attributed the statement about the parents being troublemakers and calling Ms. Horen crazy to defendant Billau. Thus, they have not stated a claim for defamation against him.

Even if plaintiff had attributed those statements to Mr. Billau, he has not shown that they were made within the applicable one year limitations period under O.R.C. § 2305.11(A).

Even if plaintiff filed his complaint within the limitations period, he has not stated a cause of action for defamation, which "is the unprivileged publication of a false and defamatory matter about another." *Lakota Lac. Sch. Dist. Bd. of Ed. v. Brickner*, 108 Ohio App. 3d 637, 647 (1996) (citing *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 353 (1992).

The court decides "as a matter of law whether a statement is defamatory." *Early v. The Toledo Blade*, 130 Ohio App. 3d 302, 320 (1998) (citation omitted). Calling someone "crazy" or a "troublemaker" is not defamatory as a matter of law. Rather, such statements are expressions of opinion, which are not actionable. *Rizvi v. St. Elizabeth Hosp. Med. Ctr.*, 146 Ohio App. 3d 103, 110 (2001) (crazy); *Molnar v.Klammer*, 2005 WL 3528870, *17 (Ohio App.) (troublemaker).

### 4. Other Pending Motions

Plaintiff has filed three motions: for partial summary judgment (Doc. 28); to consolidate (Doc. 36), and to amend (Doc. 37).

Each is founded on or related to the same underlying transactions and events. Defendants have conclusively shown they are entitled to summary judgment as to all causes of action that plaintiff has sought to assert against them. Therefore, each of plaintiff's motions is moot and shall be overruled on that basis.

**Conclusion**

Plaintiff has not shown any error on the part of the state hearing officers *vis-a-vis* his IDEA complaint. Likewise, he has not shown any dispute of material fact with regard to his § 504 and ADA claims, nor has he shown that he, rather than the defendants, is entitled to summary judgment.

It is, accordingly

ORDERED THAT:

1.    Defendants' motion for summary judgment (Doc. 33) be, and the same hereby is granted;

2.    Plaintiff's motions for partial summary judgment (Doc. 28), to consolidate (Doc. 36), and amend (Doc. 38), be, and the same are hereby denied;

3.    Defendant's request for sanctions (Doc. 32, at 12-14) be, and the same hereby is held in abeyance pending final appellate review, if such occurs; if plaintiff does not appeal this order, defendants may renew said request within two weeks after the date of the time to appeal has lapsed; plaintiff to oppose such motion within four weeks thereafter; defendants to reply within two weeks thereafter.

So ordered.

/s/ James G.Carr
Sr. U.S. District Judge